# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49175

BRUNOBUILT, INC., an Idaho corporation, )
)
   Plaintiff-Appellant, )
)
v. )
)
ERSTAD ARCHITECTS, PA, an Idaho )
professional service corporation; ANDREW )
C. ERSTAD, CHERYL PEARSE, )
)
   Defendants-Respondents, )
)
and )
)
MATERIALS TESTING & INSPECTION, )
LLC, an Idaho limited liability company; )
KEVIN L. SCHROEDER, CHARLES E. )
KAISER, ELIZABETH BROWN, DAVID O. )
CRAM, BRIGGS ENGINEERING, INC., an )
Idaho corporation; DEAN W. BRIGGS, )
TREASURE VALLEY ENGINEERS, INC., )
an Idaho corporation; MATRIX )
ENGINEERING, INC., an Idaho corporation; )
DOUGLAS L. UNGER, KLEINFELDER, )
INC., a California corporation; and G. )
ALEXANDER RUSH, )
)
   Defendants. )

Boise, January 2023 Term

Opinion filed: March 21, 2023

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Steven J. Hippler, District Judge.

The judgment of the district court is <u>affirmed</u>.

McConnell Wagner Sykes & Stacey, PLLC, Boise, for Appellant. Richard Lee Stacey, Jr. argued.

Brassey Crawford, PLLC, Boise, for Respondents. Ryan Janis argued.

---

1

MOELLER, Justice.

This appeal concerns a residence in the Boise foothills that was damaged by a landslide, which ultimately prevented the builder from obtaining a certificate of occupancy. BrunoBuilt, Inc., the general contractor of the project, sued multiple parties, including Erstad Architects, PA, the architectural firm for the project, Andrew C. Erstad, the principal architect, and Cheryl Pearse, the project manager from Erstad Architects, PA (collectively the "Erstad Defendants"),[1] for professional negligence in connection with work completed for construction of the residence.

The Erstad Defendants successfully moved for summary judgment on the basis that the two-year statute of limitations in Idaho Code section 5-219(4) barred BrunoBuilt's claim. Two years after the district court issued its memorandum decision and order granting summary judgment, BrunoBuilt moved the district court for reconsideration, citing new evidence and arguments. BrunoBuilt explained that it, at least in part, sought "to ensure that all facts and arguments that support its position have been raised in this case for purposes of appeal." The district court denied the motion for reconsideration, concluding it was "untimely, lacking in diligence, and improper." BrunoBuilt then appealed, challenging the decision of the district court on summary judgment and additionally asserting that the court erred in an earlier order deconsolidating the cases with other defendants. Prior to oral argument, the Erstad Defendants moved this Court to sanction counsel for BrunoBuilt pursuant to Idaho Appellate Rule 11.2 for non-disclosure of material procedural facts in its opening brief.

For the reasons stated below, we affirm the district court's decision granting summary judgment against BrunoBuilt. Additionally, we agree that the conduct of BrunoBuilt's attorney on appeal runs afoul of Rule 11.2 and impose sanctions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The property central to this appeal is Lot 16 of Terra Nativa Subdivision No. 4 in Boise ("the Property"), which was purchased by William and Amy Dempsey in 2014. In April 2014, the Dempseys, as owners of the Property, entered into a construction contract with BrunoBuilt for the construction of a residence on the Property. Per the terms of the Dempseys' contract with BrunoBuilt, "the plans, specifications, and drawings [were to be] provided by [the Dempseys]."

---

[1] At all relevant times to this appeal, Erstad Architects was organized as *Erstad Architects, PA*. However, Erstad Architects, PA, filed a statement of conversion and converted to a general business corporation (*Erstad Architects, Inc.*) on November 30, 2021. Throughout this appeal, "Erstad Architects, PA" or "Erstad Architects" is used to refer to the general corporation that is now organized as Erstad Architects, Inc.

However, the plans provided by the Dempseys were not strictly binding on BrunoBuilt. Among other provisions, the agreement provided that:

> [BrunoBuilt] may deviate from adherence to the Plans if adherence to the Plans becomes impractical or unfeasible, based upon Contractor's job-site experience or for other reasonably commercial reasons, provided such alteration does not materially change the Project. Further, the Plans and the Price (defined below), shall be modified to accommodate any change required by applicable laws, codes, ordinances, covenants, unforeseen site conditions or any architectural control committee. Any material deviation from the Plans will be initiated by a change order as provided further herein.

The construction contract also "required that the Dempseys convey Lot 16 into BrunoBuilt's name to serve as a security for [BrunoBuilt's] construction loan."

In January 2015, the Dempseys contracted with Erstad Architects, PA, to design the home. The scope of the work included "[a]rchitectural, civil, and structural design and documentation for [their] new 2 story home approximately 3,000 to 3,200 sf with a pool." The agreement between Erstad Architects, PA, and the Dempseys also contained a detailed scope of service and list of "understandings" that Erstad based its fees upon. The understandings included a delineation of key personnel working on the project:

> 1. erstad ARCHITECTS (eA) will be the Architect of Record for the project. Key personnel assigned to this project include:
> a. Architect: erstad ARCHITECTS, P.A.
> Principal-in-Charge: Andy Erstad, AIA
> Project Manager: Cheryl Pearse
> b. Civil Engineering: Dean Briggs, Briggs Engineering
> c. Structural Engineering: Eric Wolfe, Wolfe Engineering
> d. Landscape, Mechanical. Plumbing, and Electrical work to be design-build [sic] by Bruno Built.

Further, the terms and conditions of the agreement also provide that "Client and Architect understand and agree that Architect has not been retained or compensated to provide . . . site surveys, site evaluations, environmental studies, soil analysis and geological surveys[.]"

Importantly, while the Dempseys contracted separately with BrunoBuilt and Erstad Architects, PA, there was no agreement between BrunoBuilt and any of the Erstad Defendants. This arrangement is confirmed in an email from Robert Bruno, President of BrunoBuilt, to Cheryl Pearse, where Mr. Bruno stated: "I don't think I am obligated to comply with your Contract Documents outside of code or engineering requirements *since I have no contract with Erstad Architects*." (Emphasis added).

3

As agreed, the Dempseys conveyed the property to BrunoBuilt in July 2015 via a quitclaim deed. Shortly thereafter, BrunoBuilt secured financing. Over the next eight months, work on the site commenced and the project moved forward. At this time, it was unknown to BrunoBuilt and the Erstad Defendants that a portion of the subdivision where the Property was located was constructed on a pre-existing landslide.

In February 2016, as observed by BrunoBuilt's retained civil and geotechnical engineering expert, "the North Alto Via Landslide ('NAVL') reactivated. The NAVL began moving beneath a portion of the Subdivision where [the Property is] located." At this time, construction on the home was practically complete. BrunoBuilt continued finishing work up to the final inspections, despite awareness of the landslide's reactivation in Terra Nativa. As Robert Bruno later detailed in an affidavit, "final heating, final plumbing, final electrical, and final building inspections were conducted in and around February and March of 2016. The Dempsey Home passed all final building inspections relating to the physical structure of the home." The only remaining hurdle was the certificate of occupancy from the City of Boise.

Initially, the landslide only presented outward physical manifestations on the neighboring properties. However, in the subsequent weeks a landslide scarp,[2] indicating earth movement, became visible on the Property. When the highway district, fire department, and utility services to the Property were terminated due to the landslide, the City of Boise would not issue a certificate of occupancy for the residence. Regarding the specific date that physical effects were seen on the Property, BrunoBuilt stated in an answer to an interrogatory that the landslide was specifically "observed or noticed on the Dempsey Lot in March/April 2016." The effects of the landslide were not isolated to the presence of the scarp, which was indicative of serious problems below the surface. In a brief filed by BrunoBuilt before the district court, BrunoBuilt asserted that in early April 2016, the landslide "necessitate[ed] the relocation of certain utilities." Yet, an affidavit from Robert Bruno indicated the effects of the landslide in 2016 were much more substantial and required significant remediation:

> 9. As a result of the landslide, utility, highway district, and fire department services were all terminated, and the City of Boise withheld their certificate of occupancy.

---

[2] A scarp is "a steep (nearly vertical) region of exposed soil and rock at the head of the landslide" where the movement of adjacent land exposes part of the subsurface. *Landslide Features*, Kansas Geological Survey: Public Outreach https://www.kgs.ku.edu/Publications/pic13/pic13_2.html (last visited February 6, 2023).

> *Portions of the utility lines were physically damaged and/or severed by the landslide.*
>
> 10. BrunoBuilt immediately began working with the utility entities on solutions to resume services to the Dempsey Lot. The utility lines have to be rerouted to the Dempsey Home before the utilities can be turned back on. To restore the utilities, BrunoBuilt will be required to perform or pay for the majority of work for rerouting the utility lines and services, including buying a transformer, installing the conduit, installing 500 feet of water line, and 500 feet of sewer line, *as well as all the trenching, backfilling and concrete replacement.* Based on requirements from the Fire Department, BrunoBuilt will also be required to widen the driveway to 20 feet wide to accommodate a fire truck. The City of Boise has also required a retaining wall be installed in order to retain topsoil.
>
> 11. To this date, BrunoBuilt still has not been able to secure a certificate of occupancy for the Dempsey Home, and has had to incur increased costs based on the demands of the City for the certification of occupancy.

(Emphasis added).

After BrunoBuilt could not obtain a certificate of occupancy from the city, litigation ensued. In December 2016, BrunoBuilt brought an action for professional negligence against several engineers and engineering firms that were involved with the construction of the Terra Nativa Subdivision—the subdivision where the Property is located. However, BrunoBuilt did not initially name the Erstad Defendants as parties to the suit.

At some point after the landslide's reactivation in 2016, the Dempseys repudiated their construction contract with BrunoBuilt through counsel. Thereafter, BrunoBuilt filed suit against the Dempseys in a separate action initiated in December 2017. Due to the repudiation, BrunoBuilt and the Dempseys never closed on the Property. Thus, BrunoBuilt remains the titled owner and possessor of both the Property and the improvements.

In July 2018, BrunoBuilt became aware that the Property had incurred additional structural damage to the residence due to the landslide. The additional damage was "in the form of cracks in the concrete driveway and front porch stoop, cracks and separation in the stucco, cracks in the foundation, and nail heads that had popped out of the drywall." Shortly after learning of this additional damage, BrunoBuilt sought leave to amend its complaint to name the Erstad Defendants in its claim for professional negligence. The district court granted BrunoBuilt leave to amend the complaint. BrunoBuilt filed its second amended complaint in September 2018, naming the Erstad Defendants as defendants in their claim for professional negligence.

5

In February 2019, the Dempseys moved the district court to consolidate its case with BrunoBuilt's other case against the Erstad Defendants and others.[3] All parties filed a motion of non-opposition to consolidation, including BrunoBuilt, prior to the hearing on February 26, 2019. At the hearing, the district court expressed concern at the waste of judicial resources should the cases be consolidated, only to have a party then exercise its right to disqualify the judge without cause under the rules. The district court opined:

> I don't want to consolidate this only to have somebody, having a new judge assigned, then use their [right to disqualify without cause under] Rule [40] and then somebody else having to start from ground zero. So if you're going to use your Rule [40], I want to know now because that may affect my decision to consolidate.[4]

The district court inquired of each of the attorneys. The district court noted that it did not think that BrunoBuilt would have a right to disqualify since it was already a party to both suits but nevertheless inquired of BrunoBuilt's position for the record. Counsel for BrunoBuilt responded that it "would not waive the right to do that. I don't know that that's been discussed, but we do not wish to waive the right to do that." The district court then inquired whether BrunoBuilt believed it had such a right. Counsel for BrunoBuilt responded that "[t]hat's why I don't want to waive it, I'm not sure whether we have one or not, but if we do we'd like to keep it."

With BrunoBuilt equivocating on whether it would waive or invoke Rule 40, the district court indicated its intent to conditionally consolidate the cases:

> THE COURT: All right. Well, I'm not sure you would have a right because you're already a party to the action and so I don't think you would have a right to do that, but I will conditionally consolidate the case. In the event that you do exercise that right, I'm going to not consolidate. Does that make sense?
>
> COUNSEL FOR BRUNOBUILT: I understand.
>
> THE COURT: In other words, you need to make a decision within 14 days from now whether or not you're going to exercise that right. If you indicate you are, then

---

[3] BrunoBuilt brought suit against the engineers and architects who performed work on the Nativa Terra subdivision and the Property (including Briggs Engineering and the Erstad Defendants) in *BrunoBuilt, Inc. v. Materials Testing & Inspection, LLC et* al, Ada County Civil Case No. CV01-16-22915 (the "Erstad Lawsuit"). This case was assigned to the Honorable Steven J. Hippler. BrunoBuilt's suit against the Dempseys (which was separately consolidated prior to include the City of Boise and Terra Nativa, LLP), *BrunoBuilt, Inc. v. William Dempsey and Amy Dempsey*, Ada County Civil Case No. CV01-17-23686 (the "Dempsey Lawsuit"), was assigned to the Honorable Samuel A. Hoagland.

[4] Although the district court said "Rule 25," it was clearly referring to Idaho Rule of Civil Procedure 40, which governs judicial disqualifications in civil cases. Idaho Criminal Rule 25 is the criminal counterpart to Rule 40.

I'm probably not going to consolidate, if I decide you would have a right to that Rule [40].

Later at the hearing, Judge Hippler disclosed a remote personal connection that he once had to the Dempseys' oldest child through coaching youth sports. The court explained:

> THE COURT: So you folks are aware, when my oldest kid was playing little league football, I think the Dempseys['] kid was on my kid's team that I helped coach. So I helped coach their oldest kid, you know, for three or four years in little league football. I have no relationship with them whatsoever, other than at one point I helped coached their kid. Anybody see that as being a problem? I don't think I have any bias or prejudice for or against them in any way. They seemed like nice people. I really didn't have much interaction with them other than talking about the kids['] football team. Anybody see a problem?
>
> COUNSEL FOR THE DEMPSEYS: No, sir.
>
> COUNSEL FOR THE CITY OF BOISE: No, your Honor.
>
> THE COURT: I wanted to make sure you knew that going in.

The district court inquired whether the other parties saw that as a problem, but there was no objection voiced at the hearing by any party.

The day after the hearing, the district court issued its written order granting the unopposed motion to consolidate based on the record and arguments made at the hearing. In its order, the district court noted in a footnote:

> At the hearing. the Court indicated it would grant the motion to consolidate conditioned on all the parties agreeing to waive any disqualification rights they still retained under IRCP 40(a). The Court found this condition appropriate because disqualification after consolidation of these two cases—into which a great deal of judicial resources has already been dedicated—would destroy any judicial economy saved by consolidation. BrunoBuilt's counsel declined to waive pending confirmation with his client. Upon reviewing the record in CV01-l7-23686, however, BrunoBuilt did not exercise its right to disqualification after the filing of the scheduling orders in that case, both of which listed among the potential alternate judges "All Sitting Fourth District Judges." Scheduling Order (April 2. 2018); Corrected Amended Scheduling Order (Oct. 22, 2018), filed in Ada County Case No. CVOI-l7-23686. Thus, any right to disqualification in the consolidated matter has been waived by BrunoBuilt.

Eight days after the hearing, BrunoBuilt filed a motion to disqualify Judge Hippler as the presiding judge of the consolidated case pursuant to Idaho Rule of Civil Procedure Rule 40(a)(4),

arguing that he was a "new judge" to the case.[5] Among other arguments in their motion, BrunoBuilt noted its concern over the "relationship" Judge Hippler had with the Dempseys. Notably, however, BrunoBuilt did not move to disqualify for cause pursuant to I.R.C.P. Rule 40(b), it only moved for a disqualification as a matter of right without cause pursuant to Rule 40(a). The district court concluded that BrunoBuilt did not have a right to disqualify without cause in the consolidated action; however, "to avoid any possible concern about the appearance of bias of which BrunoBuilt appears to now claim, the Court will self-disqualify in case CV01-17-23686—the [consolidated] case in which the Dempseys are parties—under IRCP 40(c)." In the interest of judicial economy and recognizing that "each case retains its character as a separate and individual case despite consolidation, . . ." the district court deconsolidated the two remaining cases pursuant to Rule 42. Thus, the Dempseys' suit was returned to Judge Hoagland and Judge Hippler retained the Erstad suit—just as the cases were originally assigned prior to consolidation. Each case proceeded separately.

In the deconsolidated Erstad Lawsuit, the Erstad Defendants moved for summary judgment. They asserted three independent grounds, arguing that: (1) BrunoBuilt's claim is barred by the statute of limitations for a claim of professional negligence in Idaho Code section 5-219(4); (2) BrunoBuilt's claim is barred by the economic loss rule; and (3) the Erstad Defendants did not owe BrunoBuilt a duty of care. The district court agreed and granted the defendants' motion for summary judgment on all three grounds on October 8, 2019. A final judgment was entered by the district court on August 5, 2021. On August 19, 2021, almost two years after summary judgment was first granted, BrunoBuilt moved to reconsider, based on new arguments and evidence. BrunoBuilt filed its notice of appeal on September 16, 2021.

The district court issued its decision denying the motion to reconsider on November 18, 2021, concluding that the motion was "untimely, lacking in diligence, and improper." In its

---

[5] Per local rules, the parties were aware Judge Hippler would be the presiding judge over the consolidated action. Fourth Jud. Dist. L.R. 10 (effective April 13, 2018) ("**Rule 10. Consolidation of Cases.** Motions to consolidate pending actions pursuant to I.R.C.P. 42(a), I.C.R. 8, or I.R.F.L.P. 106 *shall be presented to and ruled upon by the judge to whom the lowest-numbered or first-filed case has been assigned among those matters sought to be consolidated*, except for domestic relations cases as provided in I.R.F.L.P. 106.C. If a motion to consolidate is granted, all further action with regard to the consolidated cases shall be heard by the judge who is assigned the lowest-numbered or first-filed case. Notice shall be given to all parties in each action involved and a copy filed in each case involved. In civil and family cases, if the motion is granted, all future filings shall be made only in the lowest-numbered or first-filed case.") (emphasis added), https://isc.idaho.gov/orders/4th_District_Local_Rules_Order_07.01.18.pdf. Despite the knowledge that Judge Hippler would be the presiding judge, BrunoBuilt still filed a motion of non-opposition to the consolidation.

decision, the district court reasoned that BrunoBuilt did "not challenge the correctness of the Order, but raises new arguments based on law in existence when it originally opposed the Erstad Defendants' summary judgment motion." Thus, since the new arguments were grounded in law in existence at the time the summary judgment was initially granted, the district court determined that there was "effectively nothing to reconsider." The district court also noted that if the court "were to consider BrunoBuilt's new arguments, it would in effect be allowing a party to respond to a summary judgment motion beyond the time limits—in this case, two years beyond—set by IRCP 56."

## II. STANDARD OF REVIEW

When this Court reviews a trial court's ruling on a motion for summary judgment, it applies the same standard used by the trial court originally ruling on the motion. *Krinitt v. Idaho Dep't of Fish & Game*, 162 Idaho 425, 428, 398 P.3d 158, 161 (2017). Pursuant to the Idaho Rules of Civil Procedure, a court "must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "All disputed facts are to be construed liberally in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party." *Foster v. Traul*, 145 Idaho 24, 28, 175 P.3d 186, 190 (2007). "If the evidence reveals no disputed issues of material fact, what remains is a question of law, over which this Court exercises free review." *Krinitt*, 162 Idaho at 428, 398 P.3d at 161.

When this Court reviews a discretionary decision of the district court for an abuse of discretion, such as on a motion to consolidate, this Court determines whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III. ANALYSIS

**A. Since BrunoBuilt did not properly assert any error related to the denial of its motion to reconsider on appeal, this Court need not address the motion to reconsider and will not consider the newly asserted arguments or evidence.**

Before this Court is both the district court's initial ruling on the motion for summary judgment and its denial of the motion to reconsider filed two years later. The Erstad Defendants

9

assert that we should not consider the new evidence and arguments raised at the motion to reconsider stage and, instead, simply review the summary judgment decision based on the record before the district court when it ruled on the motion for summary judgment. In the Erstad Defendants' view, the district court's denial of the motion to reconsider, and the new evidence and arguments raised therein, were not properly argued on appeal and should not be considered in reviewing the district court's summary judgment ruling.

Since the motion to reconsider presents new evidence and new arguments not argued during the initial motion for summary judgment, we must first resolve whether the motion to reconsider has been properly presented on appeal. The district court characterized the new evidence in the motion for reconsideration as not new to the case, but as evidence and arguments that should have been presented to the court during the motion for summary judgment in 2019. In its memorandum decision and order concerning the motion for reconsideration, the district court observed:

> BrunoBuilt's new evidence is not "new," but consists of facts and materials that should have been presented to the Court in 2019. It includes BrunoBuilt's payment of Erstad Architects' invoices (Decl. Bruno, 6-8, Exhs. A-E); various surveys for the Terra Nativa Subdivision recorded in 2011 (Decl. Stacey, ¶¶ 2-3, Exhs. A, B); the communications between Erstad Architects and the City of Boise regarding and including the Foothills Development Application filed by Erstad Architects for Lot 16 (Decl. Bruno, ¶¶ 11, 12, 14—17, Exhs. I-P) and other materials that could have and should have been presented far earlier. Additionally, Mr. Bruno asserts facts that should have been presented earlier, such as "Erstad Architects retained complete control over and performed all services necessary to obtain the City's approval of the Foothills Application[,]" and "I relied upon the Erstad Defendants to obtain accurate engineering reports and calculations[.]" Decl. Bruno, ¶¶ 13, 27. Besides being conclusory, there is no reason why Mr. Bruno could not have testified to these facts when opposing summary judgment two years ago. In fact, at oral argument, BrunoBuilt's counsel affirmed there was nothing in the new declarations that was "unavailable" to BrunoBuilt two years ago. Consequently, under *Ciccarello* and *Summerfield*, the Court declines to consider the new facts provided by BrunoBuilt on reconsideration.

At the summary judgment phase, BrunoBuilt argued that (1) the Erstad Defendants assumed a duty to see that engineering work they undertook was performed in a non-negligent manner, (2) the economic loss rule does not bar BrunoBuilt's claim, and (3) the statute of limitations does not bar BrunoBuilt's claim. In its motion for reconsideration, BrunoBuilt reasserted these arguments and raised four new issues: (1) the Erstad Defendants owed a statutory duty of care under the Idaho Architecture Practice Act; (2) the Erstad Defendants owed a statutory

10

duty of care pursuant to the Boise Hillside and Foothills Areas Development Ordinance; (3) the Erstad Defendants owed a duty of care because the damages incurred were foreseeable; and (4) the Erstad Defendants owed a duty of care because of the special relationship between architects and builders.

As mentioned above, BrunoBuilt waited until after final judgment was entered in this case, which was almost two years after the district court issued its memorandum decision and order granting summary judgment, before moving the district court for reconsideration of its grant of summary judgment. BrunoBuilt explained that its motion was intended, at least in part, "to ensure that all facts and arguments that support its positions have been raised in this case for purposes of appeal." The district court denied the motion for reconsideration, concluding it was "untimely, lacking in diligence, and improper." On appeal, the Erstad Defendants now assert that "[t]hrough its Appellate Brief, Plaintiff has not appealed [the motion to reconsider], or in any way argued that the trial court's Order entered on November 18, 2021, was in error." Further, the Erstad Defendants suggest that because "Plaintiff has only appealed the trial court's Order re: Defendants' [Motion for Summary Judgment], that is the only Order to be considered on appeal, and this Court should only consider the evidence and argument that was timely and properly filed on or before August 19, 2019, in accordance with I.R.C.P. 56(b)(2)."

As an initial matter, while BrunoBuilt specifically appealed the final judgment regarding the motion for summary judgment granted by the district court, BrunoBuilt did not mention the motion to reconsider in its notice of appeal. After BrunoBuilt filed its notice of appeal, the district court ruled on the motion to reconsider, denying BrunoBuilt's request. BrunoBuilt did not amend its notice of appeal to include its motion to reconsider. However, Idaho Rule of Appellate Procedure 17(e) provides that the "notice of appeal . . . shall be deemed to include, and present on appeal . . . (C) All interlocutory or final judgments and orders entered after the judgment or order appealed from . . . ." I.A.R. 17(e). Thus, BrunoBuilt did not have to separately appeal the motion to reconsider.

Nevertheless, while BrunoBuilt did not have to separately appeal the motion to reconsider, it was still required to make an argument compliant with Idaho Appellate Rule 35 for this Court to consider it. Rule 35(a)(6) mandates that an appellate brief "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6). Further,

11

"[a] reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief." *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005); *see also Bell v. Idaho Dep't of Lab.*, 157 Idaho 744, 749, 339 P.3d 1148, 1153 (2014) ("[W]e 'will not consider arguments raised for the first time in the appellant's reply brief.' ") (quoting *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)). "On appeal, the appellant bears the burden of proving error." *Dorr v. Idaho Dep't of Lab.*, No. 48810, 2022 WL 17219183, at *3 (Idaho Nov. 25, 2022) (citing *Allen v. Campbell*, 169 Idaho 125, 129–30, 492 P.3d 1084, 1088–89 (2021)). Thus, an "appellant's failure to comply with Rule 35(a)(6) results in a forfeiture of the alleged error." *Id.* (citing *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 745, 9 P.3d 1204, 1211 (2000) ("Absent compliance with the [Idaho Appellate Rules], this Court will not search the record for error. Error is never presumed on appeal and the burden of showing it is on the party asserting it.")).

BrunoBuilt never argued or mentioned the motion to reconsider in its opening brief on appeal. In reply, BrunoBuilt argues: "On the contrary, BrunoBuilt reiterated in *Appellant's Opening Brief* the very same *new* arguments it made in support of its motion for reconsideration. The unmistakable purpose of those renewed arguments was to illustrate the trial court's error." While that may be true, BrunoBuilt has woven these new arguments into its appeal without first explaining which arguments are new, why they should be considered on appeal, or how the trial court erred by refusing to address them when denying the motion to reconsider.

At the hearing on the motion to reconsider, the district court was skeptical of BrunoBuilt's intention of using the motion to reconsider in an attempt to preserve an unargued issue for a future appeal: "That's exactly one of the reasons the courts have said we shouldn't be having motions to reconsider. It is not an avenue for you to button down your appeal on issues that should have been raised earlier that you didn't raise." This was strongly reiterated by the district court in its memorandum decision on the motion for reconsideration. The district court wrote:

> In moving for reconsideration, BrunoBuilt does not challenge the correctness of the Order, but raises new arguments based on law in existence when it originally opposed the Erstad Defendants' summary judgment motion. Since these arguments were not raised in opposing the motion for summary judgment, there is effectively nothing to reconsider. Further, if the Court were to consider BrunoBuilt's new arguments, it would in effect be allowing a party to respond to a summary judgment motion beyond the time limits—in this case, two years beyond—set by IRCP 56.

12

> Moreover, the only reason proffered by BrunoBuilt for the extraordinary delay in bringing these materials before the Court is "to ensure that all facts and arguments that support its positions have been raised in this case for purposes of appeal." Memo, p. 2. Indeed, its Notice of Appeal was filed shortly after moving for reconsideration. *BrunoBuilt effectively concedes that its motion to reconsider is not to correct legal or factual errors in the Order, but for the tactical reason of appellate preservation. This is not the purpose of [a] motion to reconsider.* Consequently, the Court denies BrunoBuilt's motion to reconsider.

(Emphasis added). BrunoBuilt failed to address this concern in their opening brief but, in its reply brief, BrunoBuilt explained that appellate preservation was only one of "*two* motivations for its motion to reconsider. . . ." (Emphasis in original). The other purpose was to ask the district court to reconsider its earlier rulings.

A motion to reconsider allows the *trial court* to do just that: reconsider its prior ruling in the light of new evidence or additional authority. It is not a vehicle to undermine the trial court's decision on appeal by allowing newly asserted arguments and evidence—placed into the record at the eleventh hour—to provide a basis for an appellate court to second guess the trial court's initial decision. While a motion to reconsider can be properly raised to timely present the trial court with additional evidence or a relevant legal theory that was not initially considered by the trial court, it is not a tactical loophole to circumvent appellate preservation requirements. "[W]hile a motion for reconsideration is a safety valve to protect against legal and factual errors, it is not intended to be a mechanism that encourages tactical brinkmanship or a lack of diligence." *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 234, 494 P.3d 769, 782 (2021). In other words, reconsideration serves as a judicial backstop granting the trial court another opportunity to make the right call; however, it does not provide appellants with a fourth strike on appeal.

It appears from BrunoBuilt's opening brief on appeal that it asserted the new arguments and relied on the new evidence associated with its motion for reconsideration, even though they were not considered by the district court in its summary judgment ruling. More troubling, BrunoBuilt failed to disclose in its opening brief the existence of the motion to reconsider or that the arguments and facts it was relying on to demonstrate error on appeal were not before the district court at the summary judgment stage and rejected on reconsideration.

As the appellant, BrunoBuilt bears the burden of proving error in the trial court's underlying ruling. *Dorr v. Idaho Dep't of Lab.*, No. 48810, 2022 WL 17219183, at *3 (Idaho Nov. 25, 2022) (citing *Allen v. Campbell*, 169 Idaho 125, 129–30, 492 P.3d 1084, 1088–89 (2021)).

13

However, BrunoBuilt has failed to comply with Rule 35(a)(6) of the Idaho Rules of Appellate Procedure since they neglected to present any argument in their opening brief as to why the district court erred in not considering the "new" evidence and arguments raised in the belated motion for reconsideration. Thus, we conclude that BrunoBuilt has forfeited its claims of error related to the motion for reconsideration under Idaho Appellate Rule 35(a)(6). Accordingly, we will only review BrunoBuilt's appeal of the district court's summary judgment ruling, and we will do so by only reviewing the arguments and evidence in the record that BrunoBuilt presented to the district court at that time.

## B. BrunoBuilt's claims are barred by the statute of limitations.

The district court concluded that BrunoBuilt's claims were barred by the statute of limitations because the time prescribed by statute had fully accrued and that the statute applied to all the Erstad Defendants. On appeal, BrunoBuilt argues that the statute of limitations does not apply for two reasons: (1) the time for accrual did not begin to run until at least 2018, when damages to the residence were discovered; and (2) the statute of limitations applicable to such claims does not apply to Pearse or Erstad Architects, PA because they were not "licensed." We will address these arguments in turn.

### 1. BrunoBuilt failed to bring its claims within two years of the accrual of the first damage to its property.

BrunoBuilt argues that the statute of limitations under Idaho Code section 5-219(4) does not bar this action because "the Dempsey Residence constitutes separate property that was not the subject of the underlying transaction." This argument is identical to the issue raised in a companion case, *BrunoBuilt, Inc. v. Briggs Engineering, Inc.*, No. 49176, 2023 WL 2375766 (Idaho Mar. 7, 2023) where we rejected BrunoBuilt's attempt to circumvent the statute of limitations by separating the home and land for assessing damages through the economic loss rule. There, as here, the house and lot were both the subject of the same underlying transaction—a single construction agreement which transferred ownership of the Lot to BrunoBuilt as security for a loan to build the Dempsey home. There were no recoverable property damages to a "property other than that which is the subject of the transaction." *Brian & Christie, Inc. v. Leishman Electric, Inc.*, 150 Idaho 22, 26, 244 P.3d 166, 170 (2010). Thus, the date of accrual for the statute of limitations is 2016, when the landslide first damaged the lot and severed the utilities of the nearly completed

residence. *See Briggs*, 2023 WL 2375766, at *6–7. "The timeline does not shift under BrunoBuilt's novel economic loss argument." *Id.* at *7.

### 2. *The statute of limitations bars BrunoBuilt's claim against all Erstad Defendants because they operated under the supervision of a licensed architect.*

In its second amended complaint, BrunoBuilt added the Erstad Defendants, but only in regard to one cause of action: professional negligence. Despite its only claim being for professional negligence, BrunoBuilt maintains that the statute of limitations applicable to such claims does not apply to certain defendants. More specifically, BrunoBuilt argues that the definition of "professional malpractice" precludes application of the statute of limitations to Erstad Architects, PA, and Cheryl Pearse. As defined in the applicable statute of limitations, "[t]he term 'professional malpractice' as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation *licensed* to perform such services under the law of the state of Idaho." I.C. § 5-219(4) (emphasis added). Thus, BrunoBuilt argues that since neither Erstad Architects, PA, nor Cheryl Pearse were properly licensed, the two-year statute of limitations does not apply. In BrunoBuilt's view, and despite bringing a professional negligence claim against these defendants, the longer, four-year "catch-all" statute of limitations in Idaho Code section 5-224 should apply. *See* I.C. § 5-224 ("An action for relief not hereinbefore provided for must be commenced within four (4) years after the cause of action shall have accrued.").

BrunoBuilt cites *Owyhee Cnty. v. Rife* for the proposition that there is "a threshold requirement that the person, firm, association, entity or corporation be licensed to perform such services and if the particular defendant is not so licensed to perform the type of service rendered, then the provision of I.C. § 5-219(4), creating a two-year statute of limitations for professional malpractice, is not applicable." 100 Idaho 91, 96, 593 P.2d 995, 1000 (1979). In *Rife*, three defendants operated an accounting partnership. One of the defendants was a "certified public accountant" and the other two denominated themselves as "public accountants." *Id.* This Court held that the two unlicensed defendants were not "engaged in professional services for which they were licensed." *Id.* Further, since they were organized as a partnership and "all partners are liable jointly and severally for everything chargeable to the partnership[,]" this Court determined that even though the statute of limitations may have run for the claim against the properly licensed

15

defendant, he remained jointly and severally liable for the claims against the unlicensed defendants through their partnership arrangement. *Id.*

The facts of this case are distinguishable from those in *Rife*. Here, in regard specifically to Erstad Architects, PA, it was a professional services corporation at all relevant times in this case. *Cf. supra* note 1. This is particularly relevant here because Idaho Code section 30-21-901 provides that "[n]o professional entity may render professional services in this state *except through its managers, members, employees and agents who are duly licensed or otherwise legally authorized to render such professional services within this state*." I.C. § 30-21-901(d) (emphasis added). Thus, as a professional entity, it may only render professional services *through* its licensed managers, members, employees, and agents. Importantly, for the purposes of this section of Idaho Code, "professions shall include the practice of architecture." I.C. § 30-21-901(b).

The district court concluded that "it defies reason that Erstad Architects would not be considered 'professional' where it is an architectural firm owned by and provid[ing] professional services through a licensed architect." This position is bolstered by Idaho Code section 30-21-901(d) which prohibits a professional entity from engaging in professional services "except through" those individuals licensed to engage in professional services. I.C. § 30-21-901(d). Such a position does not undermine this Court's holding in *Rife.* In *Rife*, members held themselves out as public accountants and engaged in accounting services while not being licensed. Here, Erstad Architects, PA was engaged in the practice of architecture *through* its licensed architects as required by Idaho Code section 30-21-901(d). Therefore, we conclude that the statute of limitations of Idaho Code section 5-219(4) does properly apply to Erstad Architects, PA.

BrunoBuilt also asserts that *Rife* should bar the application of Idaho Code section 5-219(4) to Cheryl Pearse. However, as mentioned above, the facts of this case are distinguishable from *Rife*. Unlike in *Rife*, Cheryl Pearse did not hold herself out as offering the professional services of an architect—she was listed as the project manager. As the district court concluded, "Andrew Erstad act[ed] as the Principal Architect in charge and Ms. Pearse act[ed] as the Project Manager engaged in day to day oversight and communications." Andrew C. Erstad attested that he is "the senior architect with the company and ha[s] final say when it comes to projects by Erstad Architects." Further, the ultimate responsibility of Andrew C. Erstad as the licensed architect is also implicit in the agreement between the Dempseys and Erstad Architects, PA. It provides that:

> Architect's services in connection with the Project shall not subject Architect's individual employees . . . to any personal legal exposure for the risks associated with the Project. Therefore, . . . Client agrees that as Client's sole and exclusive remedy, any claim, demand or suit shall be directed and/or asserted only against Architect, and not against any of Architect's employees, officers or directors.

Thus, the record indicates that Pearse, as project manager, acted under the supervision and control of the licensed architect, Andrew C. Erstad. An analogy can be drawn to that of a paralegal, who also operates under the supervision and control of one who is licensed. Arguably, if professional malpractice occurred on a document that the paralegal helped prepare, but the attorney ultimately reviewed, signed, and submitted it to a court, any error would be attributable to the attorney and the attorney's professional malpractice. Similar to an attorney signing a pleading, architects "shall have a seal, the impression of which must contain the name and Idaho architect license number of the architect and the words 'licensed architect' and 'state of Idaho,' with which *he shall seal all technical submissions issued from his office*." I.C. § 54-304(1) (emphasis added). Further, an architect may only sign and seal technical submissions if they were prepared by the architect, another architect (subject to certain conditions), or "prepared by persons under the architect's responsible control." I.C. § 54-304(3)(b). It would be an odd result for one who is under the supervision and control of a licensed professional to be subject to liability because they are not licensed, while a claim against the ultimately responsible, licensed party is barred by the statute of limitations. Since the claim against Andrew C. Erstad had fully accrued and is barred by the statute of limitations, it follows that any attributable alleged professional malpractice by an employee of his firm under his supervision and control should be barred by the same statute of limitations. Therefore, we hold that *Rife* does not apply to a professional malpractice claim to one who (1) does not hold themselves out as a licensed individual and (2) who operates under the supervision and control of a licensed individual to whom a claim of malpractice would be attributable.

Accordingly, we affirm the district court's conclusion that the statute of limitations had fully accrued and applied to all defendants to bar BrunoBuilt's claim. Because we have affirmed summary judgment for the reasons set forth above, we need not address the alternate bases set forth in the court's decision.

## C. The district court did not err in its handling of the parties' stipulated motion to consolidate and BrunoBuilt's subsequent motion to disqualify.

Under Idaho Rule of Civil Procedure Rule 42(a), a trial court may consolidate multiple actions before the court if the actions each involve a common question of law or fact. "It is

generally recognized that if the actions are such as may be consolidated, and unless by statute or rule consolidation is a matter of right (which is not the situation in this State) the trial court is vested with a discretion to consolidate or refuse to do so, and the exercise of such discretion will not be reviewed except in a case of palpable abuse." *Branom v. Smith Frozen Foods of Idaho, Inc.*, 83 Idaho 502, 508, 365 P.2d 958, 961 (1961).

On appeal, BrunoBuilt creatively argues that the district court "tacitly den[ied]" its motion to disqualify without cause through deconsolidating the cases. Yet, BrunoBuilt asserts no basis for concluding that the district court's decision to deconsolidate was an abuse of discretion, let alone a palpably abusive one. Further, since Judge Hippler disqualified himself from the case involving the Dempseys, it did not "tacitly deny" BrunoBuilt's motion. Instead, the district court determined that although BrunoBuilt did not have a right to disqualify the judge, it would be best to do so anyway to avoid further issues. Additionally, because BrunoBuilt was told that the district court would not consolidate should BrunoBuilt invoke a right to disqualification, the district court proceeded just as it informed BrunoBuilt it would at the hearing regarding consolidation.

BrunoBuilt concedes that "there is no dispute that BrunoBuilt could not have automatically disqualified Judge Hippler at the time the cases were consolidated." Nevertheless, it contends that "BrunoBuilt *was* entitled to automatically disqualify Judge Hippler in the Dempsey Lawsuit because it was also a party to that case, and that disqualification would have applied to the consolidated version of both cases." BrunoBuilt argues that this is so because the cases retained their separate character and cites *Jones v. Jones* where this Court generally acknowledged that consolidation "does not merge the suits into a single cause, or change the rights of the parties." 117 Idaho 621, 624, 790 P.2d 914, 917 (1990) (quoting *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496 (1933)).

In *Jones,* this Court recognized the general rule that "where a judge cannot be disqualified in one case which is later consolidated with another, the party who filed the first motion to disqualify could again seek disqualification as to the second case." 117 Idaho at 624, 790 P.2d at 917. However, BrunoBuilt overlooks that in *Jones* we did not apply the general rule. Instead, this Court recognized there was "an exception to this general proposition under the facts of this case." *Jones*, 117 Idaho at 624, 790 P.2d at 917. Accordingly, we held "that under circumstances such as this, where the consolidated cases are absolutely identical and are in fact the same action, a failed motion to disqualify the judge in one case will serve as the only bite of the apple of disqualification

18

without cause." *Id.* This Court recognized "[a]fter failing to timely disqualify [the judge] in the Twin Falls County . . . case, [the Plaintiff] cannot subsequently disqualify [the judge] in the same case filed in another county." *Id.*

Here, the facts of this case more strongly align with the logic applied by this Court in *Jones*. In *Jones*, the plaintiff had moved to disqualify the judge without cause, but it was untimely. In this case, Judge Hippler was not a new judge assigned to preside over the case. BrunoBuilt never moved to disqualify Judge Hippler in the present case nor did it object to Judge Hippler being an alternate in the Dempseys' case. As provided by rule, a motion for disqualification without cause must have been filed:

> [N]ot later than 7 days after service of a written notice or order setting the action for status conference, pretrial conference, trial or for hearing on the first contested motion, or not later than 21 days after service or receipt of a complaint, summons, order or other pleading indicating or specifying who the presiding judge to the action will be, whichever occurs first.

I.R.C.P. 40(a). BrunoBuilt made no such motion within any of the time frames under the rule; therefore, it is not entitled to another opportunity to disqualify Judge Hippler in either case. BrunoBuilt was not bestowed a new right to disqualify the same judge it had throughout the litigation based on the consolidation of two cases in which it was an existing party. Thus, we affirm the district court's conclusion that BrunoBuilt did not have a right under the rules to disqualify Judge Hippler after consolidation.

It is recognized that BrunoBuilt argues that had it learned of the new information regarding Judge Hippler and his prior connection to the Dempsey family, it would have moved to disqualify him earlier.[6] However, there is no leniency in the rule as it pertains to disqualification without cause. If there was information that BrunoBuilt learned of that lead BrunoBuilt to believe that the district judge was "biased or prejudiced for or against any party or the subject matter of the action[,]" then BrunoBuilt could have filed a motion for disqualification for cause. Indeed, Rule 40(b) contemplates such a course of events as the motion for disqualification for cause "may be made at any time."

Again, it must be remembered that BrunoBuilt is not arguing that the judge assigned to the case failed to recuse himself. Rather, it only argues that the district court erred in deconsolidating

---

[6] It should be noted that BrunoBuilt did not initially object or voice any concern at the hearing when the judge disclosed the connection with the Dempseys' son.

the cases, which it claims is a "tacit denial" of the motion to disqualify. Since it makes no other argument that the district court erred in deconsolidating the cases, none need be addressed. Accordingly, we hold the district court did not abuse its discretion in deconsolidating the cases and in denying the motion to disqualify.

**D. The Respondent's motion for sanctions is granted because of counsel's lack of candor with the Court on appeal.**

It has been said that an attorney is "an officer of the courts before which [they] practice, and . . . owe[s] the highest duties of fidelity to justice and the rule of law." O'Connor, Sandra Day, *On Being Ethical Lawyers*, Life in the Law Vol. 2: Service and Integrity, Dec. 15, 2009, at 27, https://digitalcommons.law.byu.edu/life_law_vol2/8/. Indeed, an attorney's duty of candor is of paramount importance in every legal forum and before every tribunal: "Although all of the Rules of Professional Conduct pertain to the work of the trial lawyer, the rules concerning the duties of an advocate are of special relevance to the conduct of litigation. They impose obligations of candor, fairness, and honesty in the presentation of cases to a tribunal. . . ." Craig Lewis, IDAHO TRIAL HANDBOOK § 1:4 (2005).

Attorneys in Idaho take an oath that they will "never seek to mislead a court or opposing party by false statement of fact or law and will scrupulously honor promises and commitments made." Idaho State Bar, *Attorney's Oath*, https://isb.idaho.gov/wp-content/uploads/Attorneys-Oath.pdf (last visited January 24, 2023). Additionally, attorneys have a duty of candor prescribed by the rules of professional responsibility and other obligations under the appropriate rules of procedure related to the review of court documents they submit. *E.g.*, I.R.P.C. 3.3 ("A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . ."); I.A.R. 11.2; I.R.C.P. 11.

Notwithstanding these high duties and responsibilities, during the course of this appeal, counsel for BrunoBuilt has failed to identify key procedural facts and has used arguments and evidence from a later stage of the litigation (the motion for reconsideration), to show error at an earlier stage (the motion for summary judgment). Counsel has done so without initially acknowledging or disclosing the existence of the motion for reconsideration to this Court on appeal, that the district court refused to consider its arguments, or explaining how the district court erred in failing to consider its arguments. As a result, the Erstad Defendants moved this Court for

20

sanctions pursuant to Rule 11.2 of the Idaho Rules of Appellate Procedure. We agree with the Erstad Defendants that the conduct of counsel for BrunoBuilt is improper and sanctionable. Accordingly, the motion for sanctions, which seeks attorney fees on appeal against counsel for BrunoBuilt, is granted.

Under Rule 11.2, the signature of an attorney on a court filing constitutes a certificate that the attorney has read the document and that, after a reasonable inquiry, to the best of the attorney's knowledge, information, and belief , the brief is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." I.A.R. 11.2. If an attorney signs a document in violation of Rule 11.2, this Court, on its own initiative or by motion, "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the notice of appeal, petition, motion, brief or other document including a reasonable attorney's fee." I.A.R. 11.2.

"We construe [Idaho Appellate Rule] 11.2 in the same manner as [Idaho Rules of Civil Procedure Rule] 11(a)(1) because they have identical wording. [A]ttorney fees can be awarded as sanctions when a party or attorney violates either (a) the frivolous filings clause or (b) the improper purpose clause." *Hartgrave v. City of Twin Falls*, 163 Idaho 347, 357, 413 P.3d 747, 757 (2018) (quoting *Andrews v. State Indus. Special Indem. Fund*, 162 Idaho 156, 160, 395 P.3d 375, 379 (2017)). As we have said, "[t]he frivolous filings clause applies when an argument is not 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....' I.A.R. 11.2(a). We have previously interpreted the frivolous filings clause to apply under the same circumstances that warrant awards under Idaho Code section 12-121." *Bergeman v. Select Portfolio Servicing*, 164 Idaho 498, 503, 432 P.3d 47, 52 (2018) (quoting *Akers v. Mortensen*, 160 Idaho 286, 289–90, 371 P.3d 340, 343–44 (2016) (awarding attorney fees under both Idaho Code section 12-121 and Idaho Appellate Rule 11.2 for the same conduct)). Importantly, "Rule 11.2 sanctions are appropriate against an attorney when we have been convinced that the represented party does not 'bear[ ] responsibility for the legal arguments advanced on [its] behalf.' " *Bergeman*, 164 Idaho at 503, 432 P.3d at 52 (quoting *Funes v. Aardema Dairy*, 150 Idaho 7, 13, 244 P.3d 151, 157 (2010)).

21

Here, what makes the argument raised in BrunoBuilt's appellate briefing frivolous is the manner in which it was presented and argued by counsel on appeal. Specifically, in its opening brief, counsel advanced arguments and theories only raised at the motion to reconsider stage without disclosing them as such. As noted, BrunoBuilt never mentioned the motion to reconsider in its opening brief. While partially an error of procedure, what makes the lack of discussion troubling is the complete disregard of the district court's position on the new arguments and evidence below. The district court expressly found the newly proffered evidence and arguments untimely. This was the central focus of the memorandum decision and order concerning the motion to reconsider. Further, the district court explained that a motion to reconsider was not a vehicle to "button down" an appeal—especially when the evidence and arguments were ascertainable to BrunoBuilt two years prior with reasonable diligence. Nevertheless, despite the district court's rebuke of this evidence, this conclusion by the district court below was never challenged on appeal or disclosed to this Court in BrunoBuilt's opening brief. To submit a brief that fails to disclose the contrary position of the district court below was not just procedurally improper, it was a manifest failure of the attorney's duty of candor, an attempt to mislead this Court, and is a violation of Rule 11.2 of the appellate rules.

Importantly, this failure can only be attributed to counsel, Mr. Stacey. BrunoBuilt's attorney *could have reasonably argued* that the motion to reconsider was improperly denied, cited its new evidence, and argued it was an abuse of discretion for the district court to conclude the evidence was untimely. But to do so, counsel would have had to (1) disclose the district court's ruling and (2) differentiate between the evidence and arguments raised at summary judgment from those raised at the motion to reconsider. However, before this Court on appeal, counsel failed to do either. Instead, he presented new evidence and arguments through a signed brief—all of which were rejected by the district court—as if the district court had considered them at the time it made its ruling on summary judgment. Again, this is not only procedurally improper, but it also demonstrates a lack of candor with the tribunal. Such conduct is unprofessional and sanctionable under Rule 11.2 of the Idaho Rules of Appellate Procedure.

This lack of candor in failing to disclose the motion to reconsider was first raised on appeal by counsel in Respondents' brief on appeal and, later, it was the subject of a motion for sanctions before oral argument. At oral argument, counsel for BrunoBuilt attempted to downplay the matter by characterizing the Erstad Defendants' position as "complaining" about the timing of the earlier

22

motion to reconsider—rather than BrunoBuilt's failure to properly assert their arguments on appeal. Specifically, BrunoBuilt's attorney argued: "The Erstad Defendants spend an incredible amount of their opposition briefing complaining about the timing of the motion to reconsider. And I want to make sure that the Court understands that these complaints are really not relevant to the appeal and ultimately should be ignored." Later, counsel characterizes Respondents' concerns as a "red herring" and that BrunoBuilt ultimately believes that all of the arguments asserted on appeal were "subsumed" by the arguments raised at the motion for summary judgment stage. Also, during oral argument, when this Court asked directly whether any new *evidence* from the motion to reconsider was used in the opening brief, Mr. Stacey unequivocally said no. However, the opening brief that Mr. Stacey signed and submitted clearly contradicts Mr. Stacey's representation to this Court. As one example, in denying the motion to reconsider, the district court specified that the alleged "new" evidence "include[d] *BrunoBuilt's payment of Erstad Architects' invoices* (Decl. Bruno, 6-8, Exhs. A-E). . . ." (Emphasis added). Yet, in BrunoBuilt's opening brief to this Court, without any citation to the record, BrunoBuilt asserted: "It is equally evident that the Erstad Defendants provided such services to both the Dempseys and BrunoBuilt, and *that BrunoBuilt was responsible for paying for the Erstad Defendants' services*." App. Br. 34 (emphasis added).

After many direct inquiries from this Court at oral argument, counsel eventually conceded: "There are [sic] at least one argument I will acknowledge is a new argument. That was the argument about the foreseeability."[7] Further, counsel's position that the arguments were "not new" but were instead "subsumed" in the arguments raised in opposition to the motion for summary judgment is directly contradicted by the reply brief on appeal where BrunoBuilt asserts "[o]n the contrary, BrunoBuilt reiterated in *Appellant's Opening Brief* the very same *new* arguments it made in support of its motion for reconsideration. The *unmistakable purpose of those renewed arguments was to illustrate the trial court's error*." (Emphasis added).

In addition to the patent contradictions, counsel directly made a materially false statement of fact at oral argument. In answering questions from the Court, he stated that the utilities were only moved, not damaged. However, this Court directed counsel to an affidavit from his client,

---

[7] However, in responsive briefing to the motion for sanctions, counsel for BrunoBuilt articulates there were *three* issues that were "arguably not raised before the *Reconsider Memo* was filed . . . ." Namely, counsel identified (1) issues related to statutory duties, (2) foreseeability of damages, and (3) whether an exception to the economic loss rule applied that would preclude application of the economic loss rule. Additionally, counsel conceded a fourth issue was not raised before the motion to reconsider—the alleged inconsistency of Fourth Judicial District decisions, which was raised for the first time on appeal.

Robert Bruno, testifying that the utilities were "damaged/severed." We understand that attorneys may occasionally misspeak or misstate the record during oral argument. However, counsel's conduct during oral argument, coupled with the contradictions in BrunoBuilt's briefs, bolsters our conclusion that counsel alone is responsible for the lack of candor that made BrunoBuilt's argument frivolous. Thus, he should be solely responsible for any sanction related to his conduct.

In response to the motion for sanctions, BrunoBuilt takes exception with the timing of the filing of the motion. In its memorandum in opposition to imposition of sanctions, counsel for BrunoBuilt asserts that the Erstad Defendants waited "until the last possible minute to file its thirty (30) page *Sanction Motion*. . . ." However, it was not the last possible minute. It was filed the penultimate day before oral argument, and as Idaho Appellate Rule 32 provides: "all other motions permitted under these rules, other than a motion to dismiss, may be made at any time, *before or after oral argument*." I.A.R. 32. Thus, while it might have been more helpful to file the motion sooner, the Erstad Defendants motion was timely filed.

Counsel for BrunoBuilt defends its conduct on appeal by arguing that it is allowed to evolve its arguments. He asserts that "[w]hile BrunoBuilt may have groomed its proverbial horse, it did not bring another horse into this appeal." *See State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). Further, counsel asserts that it "was never BrunoBuilt's intention to raise issues on appeal that had not been raised before *Plaintiff's Motion to Reconsider*." However, these assertions by counsel are again directly contradicted by BrunoBuilt's reply brief where counsel asserts "BrunoBuilt reiterated in *Appellant's Opening Brief* the very same *new arguments it made in support of its motion for reconsideration*. The *unmistakable purpose of those renewed arguments was to illustrate the trial court's error*." (Emphasis added). We have said that "[a] groomed horse is expected on appeal, but a different horse is forbidden." *Id.* While a new horse on appeal is forbidden, deliberately cloaking the new horse to look as if it were an old horse is sanctionable conduct.

Also in its responsive briefing, BrunoBuilt takes exception with the fact that the "Erstad Defendants filed the *Sanctions Motion* without any mention of the motion for fees/sanctions that they filed, and the district court rejected below." Counsel misunderstands the relevance of the motion to reconsider to BrunoBuilt's claim raised on appeal. The arguments presented in the current motion for sanctions concerned counsel's conduct *on appeal* and is independent of the motion for sanctions for counsel's conduct below. The Erstad Defendants did not cross appeal the

24

denial of the motion for sanctions below and the motion for sanctions on appeal was isolated to counsel's conduct on appeal. Again, it was counsel's deliberate use of arguments and evidence clearly and unequivocally disregarded by the district court "to illustrate the trial court's error" on appeal—without disclosing to this Court the material fact of when such arguments were first raised and the district court's ruling on it—that renders counsel's conduct sanctionable.

At the beginning of oral argument, counsel for BrunoBuilt informed this Court that "BrunoBuilt is withdrawing its argument that this case should be analyzed as a negligent rendition of services case, rather than a purchase of defective property case, as was raised in the appellate brief. And it is also withdrawing its arguments that an exception to the economic loss rule should apply to BrunoBuilt in this case." The waived arguments were previously submitted to this Court for consideration in BrunoBuilt's opening brief, which was signed by counsel for BrunoBuilt. In response to the motion for sanctions, BrunoBuilt argues that since those arguments have been waived by counsel at oral argument, they "are not relevant" to the Erstad Defendants' motion for sanctions. However, oral waiver of an issue at the commencement of oral argument, especially in response to a motion for sanctions, does not excuse an attorney's violation of Rule 11.2. The rule provides that if the brief is "*signed* in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction . . . ." I.A.R. 11.2 (emphasis added). An attorney cannot escape their sanctionable conduct by merely waiving the improperly asserted issues at oral argument on appeal.

The absence of any argument regarding the district court's denial of the motion to reconsider—or even disclosure of its factual existence in this case—in BrunoBuilt's opening brief to this Court was a failure in counsel's duty of candor to this Court. Since Rule 11.2 sanctions are appropriate against an attorney when we have been convinced that the represented party does not bear responsibility for the legal arguments advanced on its behalf, and since we are convinced that such is the case here, we conclude that sanctions are appropriate here against counsel for BrunoBuilt. Accordingly, the motion for sanctions against BrunoBuilt's counsel is granted. The Erstad Defendants' must submit a memorandum of fees for the additional time spent in responding to the arguments raised for the first time at the motion to reconsider or related to lack of disclosure of the motion to reconsider. The memorandum of fees shall be in accordance with the procedure for claiming attorney fees as provided in Rule 41(d) of the Idaho Appellate Rules.

**E. The Erstad Defendants are entitled to attorney fees under Idaho Code section 12-121.**

The Erstad Defendants seek attorney fees under Idaho Code sections 12-120(3) and 12-121. Because their claim under section 12-120(3) was not supported by argument or authority establishing "a basis for the claim," it is denied. *See* I.A.R. 35(b)(5). However, under their section 12-121 claim for attorney fees, the Erstad Defendants support their claim by arguing that BrunoBuilt's arguments are inconsistent with this Court's precedents and were rejected as untimely by the district court. As provided in Idaho Code section 12-121, this Court may award attorney fees "to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121.

We conclude that the lack of disclosure of procedural facts and intertwining of arguments raised at different stages has rendered this appeal wholly frivolous. Additionally, the remaining issues properly presented on appeal, are lacking in legal support and essentially invite us to second-guess the district court. While we have concluded above that counsel is solely responsible for the sanctionable legal arguments advanced on behalf of BrunoBuilt, such a conclusion does not preclude an award of attorney fees against BrunoBuilt under section 12-121 for the remaining issues.

We have previously held that "frivolous filings" under Rule 11.2 "apply under the same circumstances that warrant awards under Idaho Code section 12-121." *Bergeman*, 164 Idaho at 503, 432 P.3d at 52 (citing *Akers*, 160 Idaho at 289–90, 371 P.3d at 343–44). For example, in *Akers*, this Court awarded attorney fees under both Idaho Code section 12-121 and under Rule 11.2 of the Idaho Appellate Rules for the same conduct on appeal. *Akers*, 160 Idaho at 289–90, 371 P.3d at 343–44. In *Akers*, we remanded to the district court "for the sole purpose of apportionment of attorney fees." *Akers*, 160 Idaho at 289, 371 P.3d at 343 (citations omitted). On a subsequent appeal, the appellant in *Akers* attempted "to raise issues previously decided by this Court and outside the scope of our remand . . . ." *Id.* We found the appeal frivolous and awarded attorney fees under Idaho Code section 12-121 and also concluded that the conduct of the attorney, in signing the briefing, ran afoul of Rule 11.2. Accordingly, we also awarded attorney fees as a sanction against counsel for signing a frivolous brief.

We find the situation here similar to that in *Akers* and also award attorney fees under Idaho Code section 12-121 to the Erstad Defendants. As discussed above, we have already determined that this appeal is frivolous. The fact that Mr. Stacey's conduct was sanctionable makes BrunoBuilt's appeal no less frivolous. And since the frivolous filings clause applies under the same

26

circumstances, warranting awards under both Idaho Code section 12-121 and Rule 11.2, *Id.* at 289–90, 371 P.3d at 343–44, we find attorney fees are also appropriate here under Idaho Code section 12-121.

While the same conduct can give rise to both sanctions and an award of attorney fees, Mr. Stacey's conduct in not disclosing the motion to reconsider is particularly troubling to this Court. Accordingly, the portion of attorney fees attributable to Mr. Stacey's sanctionable misconduct on appeal shall be solely apportioned to him. The Erstad Defendants shall submit a memorandum of fees as provided in Idaho Appellate Rule 41. The memorandum of fees shall also indicate the amount of attorney fees incurred in responding to the improper arguments raised on appeal discussed above. Such fees will be apportioned to and paid by Mr. Stacey. All remaining fees shall be apportioned to and paid by BrunoBuilt.

## IV. CONCLUSION

For the reasons stated above, we affirm the district court's conclusion that the statute of limitations in Idaho Code section 5-219(4) bars BrunoBuilt's claim against the Erstad Defendants. Since we conclude the statute of limitations applies, we need not address the economic loss rule or the duty of care points of error raised by BrunoBuilt. We further conclude that the district court did not abuse its discretion in deconsolidating the cases and in denying the motion to disqualify.

Although the Erstad Defendants' request for attorney fees under Idaho Code Section 12-120(3) is denied, their motion for attorney fees under section 12-121 and for sanctions on appeal pursuant to Idaho Appellate Rule 11.2 is granted. The Erstad Defendants must submit a memorandum (1) setting forth the total attorney fees incurred on appeal and (2) detailing the portion of the fees incurred on appeal due to the sanctioned conduct. *See* I.A.R. 41 and I.A.R. 11.2. The portion attributed to the sanctioned conduct shall be assessed solely against counsel for BrunoBuilt. Costs on appeal are awarded to the Erstad Defendants as a matter of course. I.A.R. 40(a).

Chief Justice BEVAN, Justices BRODY, ZAHN and Justice Pro Tem BURDICK **CONCUR.**

27